**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| LeKENDRICK WILLIAMS,<br>      PLAINTIFF,<br><br>v.<br><br>NICKEL CITY GROUP LLC,<br>THE CINCINNATI INSURANCE COMPANY,<br>DEBT MANAGEMENT PARTNERS, LLC, and<br>HARTFORD CASUALTY INSURANCE COMPANY,<br>      DEFENDANTS. | CASE NO.:  3:21-cv-1247 |

## COMPLAINT AND JURY DEMAND

### JURISDICTION AND VENUE

1.  Jurisdiction of this Court arises under 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d).

2.  Supplemental Jurisdiction exists pursuant to 28 U.S.C. § 1367.

3.  This action arises out of the violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"), and the Texas Finance Code by Nickel City Group, LLC ("NCG") and Debt Management Partners, LLC ("DMP").

4.  Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), in that defendants transact business in this judicial district and a substantial portion of the acts giving rise to this action occurred in this District.

5.  Plaintiff resides in this District.

### PARTIES

6.  Plaintiff, Steven Smith ("Plaintiff"), is an adult individual residing in Harris County, Texas, and is a "consumer" as the term is defined by 15 U.S.C. § 1692a(3) and Tex. Fin. Code § 392.001(1).

7. DMP is a Delaware company.

8. As will be described below, DMP purchased an Account allegedly owed by Plaintiff from a third-party for the purpose of collecting on that Account to make a profit.

9. The principal purpose of DMP is the collection of debts by using the mails and telephone and other means.

10. DMP regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another that arose out of transactions in which the money, property, or services which are the subject of the transactions are primarily for personal, family or household purposes.

11. DMP is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and as that term is defined by Tex. Fin. Code § 392.001(6) and is a "third-party debt collector" as that term is defined by Tx. Fin. Code § 392.001(7).

12. NCG is a Delaware company operating from Depew, New York, according to its most recent filing with the New York Secretary of State.

13. Prior to changing its name to "Nickel City Group LLC," NCG used the name "Oracle Financial Group LLC" and before that it used the name "Unified Portfolio Service LLC."

14. NCG (still registered in Texas as Oracle Financial Group LLC) can be served in Texas via its registered agent, Registered Agent Solutions, Inc., at 1701 Directors Blvd., Suite 300, Austin, TX 78744.

15. NCG advertises on its website (https://ncgmgt-llc.com/about-us) (last visited February 16, 2021):

> When dealing with accounts receivable, the likelihood that some consumers will not pay on their accounts within a reasonable period is common. When this happens, hiring a third-party collector becomes necessary for bookkeeping or recording purposes.

> Luckily for you, NCG , LLC is offering a professional debt collection service that promises outstanding results. Your business' success is our success.
>
> What makes our collection agency different and better is the care that we take. We are diligent and thorough in our debt collections efforts and we believe that if an account can be resolved, we will resolve it. Our percentage of collections is greater than many larger collection agencies and our contingency rates are better than industry standard rates.

16. As will be described below, NCG received placement of a past due account from DMP and attempted to collect that account from Plaintiff.

17. As will be described below, NCG directed communications to Plaintiff for the purpose of collecting the Account in question from him.

18. The principal purpose of NCG is the collection of debts using the mails and telephone and other means.

19. NCG regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another that arose out of transactions in which the money, property, or services which are the subject of the transactions are primarily for personal, family or household purposes.

20. NCG is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and as that term is defined by Tex. Fin. Code § 392.001(6) and is a "third-party debt collector" as that term is defined by Tx. Fin. Code § 392.001(7).

21. Defendant The Cincinnati Insurance Company ("Cincinnati") is the surety company for the bond NCG has on file with the Texas Secretary of State, bond number 3242115.  Cincinnati is liable for acts committed by NCG pursuant to, and to the extent provided by, Chapter 392 of the Texas Finance Code and a bond secured pursuant thereto, as well as any other applicable law.

22. Cincinnati is a foreign entity that can be served in the state of Texas via its registered agent, National Registered Agents, Inc., at 1999 Bryan St., Suite 900, Dallas, Texas, 75201.

23. Defendant Hartford Casualty Insurance Company ("Hartford") is the surety company for the bond DMP has on file with the Texas Secretary of State, bond number 20BSBGV8871. Hartford is liable for acts committed by DMP pursuant to, and to the extent provided by, Chapter 392 of the Texas Finance Code and a bond secured pursuant thereto, as well as any other applicable law.

24. Hartford is a foreign entity that can be served in the state of Texas via its registered agent, C T Corporation System, at 1999 Bryan St., Suite 900, Dallas, Texas, 75201.

## FACTUAL ALLEGATIONS

25. At some time in the past, Plaintiff allegedly incurred a financial obligation that was primarily for personal, family or household purposes, namely an amount due and owing on a personal account (hereinafter the "Account").  Specifically, plaintiff believes the account was a Money Key payday loan obtained to pay for various personal effects, but was not used for any business or commercial purposes.

26. The Account constitutes a "debt" as that term is defined by 15 U.S.C. § 1692a(5) and is a "consumer debt" as that term is defined by Tex. Fin. Code § 392.001(2).

27. The Account allegedly went into default with the original creditor, Money Key.

28. After the Account allegedly went into default, the Account was purchased by DMP for collection.

29. DMP placed the Account with, or otherwise transferred the Account to, NCG.

30. NCG then contacted Plaintiff directly to collect on the Account from Plaintiff.

31. DMP maintained a financial interest in the Account at all times relevant hereto, such that DMP would make more money if NCG collected on the Account than it would make if NCG did not collect on the Account.

32. Plaintiff admits the existence of the Account, but disputes the amount NCG and DMP attempted to collect from him.

33. Plaintiff requests that defendants cease all further communications regarding the Account.

34. In approximately November and/or December 2020, NCG called Plaintiff and told him that if he did not repay the Account immediately he might be sued and/or his car might be repossessed and/or have a lien placed against it.

35. Fearful of being sued or having his car repossessed or having a lien placed on his car, Plaintiff agree to begin making payments of $269 and provided NCG with credit or debit card information.

36. Thereafter, Plaintiff obtained a new credit or debit card and the one previously provided to NCG was no longer valid.  NCG attempted to process a payment using the old card information but the payment was declined.  When NCG called Plaintiff about the declined payment, Plaintiff provided new information and thereafter made three payments as previously agreed.

37. After the payment was declined, NCG called Plaintiff and left the following message:

> Hi, good morning, LeKendrick Williams. It's John Crockwell calling you regarding the matter in my office in reference to Money Key. You had a payment scheduled for today for $269.85. Your card was declined and you need to contact me promptly to correct this error. Otherwise I will have to proceed accordingly on the matter. Mr. Williams is my direct number here is (716) 272-8425 and I'm acting on your file file number 2192710. Return my call.

38. In the voicemail message described above, NCG used the language "[o]therwise I will have to proceed accordingly on the matter" in order to scare Plaintiff into believing that something more than mere telephone and mail collection methods would be employed and to further reinforce its previous threats to sue Plaintiff and/or repossess his car and/or place a lien on his car.

39. In a call with Plaintiff after the payment declined, NCG told Plaintiff "[the creditor] will contact you through their attorney" and "pursue other avenues to get their money". This language was used for the purpose of reinforcing the previous threats to sue Plaintiff and/or repossess his car and/or place a lien on his car. Further, the threats were false as the creditor had no intention of suing Plaintiff at the time the threat was made and would not be hiring a lawyer to collect the Account as stated or implied.

40. By making all of the statements detailed above, NCG indirectly or directly told Plaintiff that involuntary collection methods were available to NCG to collect the Account, despite the fact that NCG did not have any involuntary collection methods available to it.

41. The communications described above would cause the least sophisticated consumer to believe that NCG had involuntary collection methods available to it and that NCG was represented by an attorney in the collection of the Account and/or that Plaintiff was going to be sued on the Account.

42. All of the statements described above were made for the purpose of scaring Plaintiff into making a payment on the Account.

43. As of the filing of the original Complaint in this matter, no lawsuit has been filed against Plaintiff on the Account. At the time NCG made the statements detailed above, neither

NCG nor DMP had any intent to sue Plaintiff on the Account or use involuntary collection methods to collect the Account.

44. In one or more communications with Plaintiff, NCG failed to inform Plaintiff that NCG was a debt collector, that NCG was attempting to collect a debt and/or that any information obtained would be used for the purpose of debt collection.

45. In one or more communications with Plaintiff, NCG failed to provide meaningful disclosure of its identity.

46. NCG never provided Plaintiff with notice of Plaintiff's rights to dispute the Account or request validity of the Account as required by 15 U.S.C. § 1692g.

47. NCG's collection practices caused Plaintiff to suffer fear, anxiety, stress, sleeplessness, mental anguish, embarrassment, mild depression and/or distraction from normal life.

48. NCG 's purpose for calling Plaintiff was to attempt to collect the Account.

49. The telephone calls described above each constituted a "communication" as defined by FDCPA § 1692a(2).

50. By virtue of having been sued by or received complaints from other consumers for the bad acts of NCG, DMP knew that NCG repeatedly or continuously engaged in collection practices as described above.

51. During all times pertinent hereto, DMP (a) ratified the unlawful debt collection practices and procedures used by NCG and its employees and agents in connection with their common efforts to collect consumer debts, and/or (b) had knowledge of, approved, participated in, ratified and benefitted financially from the unlawful debt collection practices used by NCG and its employees and agents in attempts to collect an alleged debt from Plaintiff as alleged in this complaint.

52. The only reason that NCG and/or its representative(s), employee(s) and/or agent(s) made telephone call(s) to Plaintiff was to attempt to collect the Account.

53. The only reason that NCG and/or its representative(s), employee(s) and/or agent(s) had telephone conversation(s) with Plaintiff was to attempt to collect the Account.

54. All of the conduct by NCG and/or DMP and/or their employees and/or agents alleged in the preceding paragraphs was done knowingly and willfully.

55. As a consequence of Defendants' collection activities and communication(s), Plaintiff seeks damages and attorneys fees and costs pursuant to 15 U.S.C. § 1692k and damages, an injunction, attorneys fees and costs pursuant to Tex. Fin. Code § 392.403.

## RESPONDEAT SUPERIOR

56. The representative(s) and/or collector(s) at NCG were employee(s) and/or agents of NCG at all times mentioned herein.

57. The representative(s) and/or collector(s) at NCG were acting within the course of their employment at all times mentioned herein.

58. The representative(s) and/or collector(s) at NCG were under the direct supervision and control of NCG at all times mentioned herein.

59. The actions of the representative(s) and/or collector(s) at NCG are imputed to their employer, NCG.

60. DMP was aware of and profited from the collection methods and practices used by NCG's employees.

61. The actions and inactions of NCG, and its employee(s) and/or agents, are imputed to DMP.

## COUNT I:  VIOLATIONS OF THE FDCPA 15 U.S.C. §1692, et seq. BY NICKEL CITY GROUP LLC

62. The previous paragraphs are incorporated into this Count as if set forth in full.

63. The act(s) and omission(s) of NCG and its representative(s), employee(s) and/or agent(s) violated 15 U.S.C. § 1692d generally and § 1692d(2)&(6) specifically, and §1692e generally and specifically §1692e(2)&(3)&(4)&(5)&(8)&(10)&(11)&(14), and §1692g(a).

64. Pursuant to 15 U.S.C. §1692k Plaintiff seeks damages, reasonable attorney's fees and costs from NCG.

## COUNT II:  VIOLATIONS OF THE TEXAS FINANCE CODE BY NICKEL CITY GROUP LLC

65. The previous paragraphs are incorporated into this Count as if set forth in full.

66. The act(s) and omission(s) of NCG and its representative(s), employee(s) and/or agent(s) violated Tex. Fin. Code §392.301(a)(7)&(8) and §392.302(1) and §392.304(a)(1)(A)& (4)&(5)&(8)&(12)&(14)&(16)&(17)&(19).

67. Pursuant to Tex. Fin. Code §392.403(a)(1), Plaintiff seeks an injunction against NCG enjoining it from future violations of the Texas Finance Code as described herein.

68. Pursuant to Tex. Fin. Code §392.403(a)(2) Plaintiff seeks damages from NCG.

69. Pursuant to Tex. Fin. Code §392.403(b) Plaintiff seeks attorney's fees and costs from NCG.

70. Pursuant to Tex. Fin. Code §392.403(e), Plaintiff seeks statutory damages of not less than $100 for each violation of the chapter in which Tex. Fin. Code §392.403(e) is codified.

## COUNT III:  INVASION OF PRIVACY (INTRUSION ON SECLUSION) BY NICKEL CITY GROUP LLC

71. In the alternative, without waiving any of the other causes of action herein, without waiving any procedural, contractual, statutory, or common-law right, and incorporating all other allegations herein to the extent they are not inconsistent with the cause of action pled here, NCG is liable to Plaintiff for invading Plaintiff's privacy (intrusion on seclusion).  NCG intentionally caused the intrusion upon Plaintiff's solitude, seclusion, or private affairs, and such intrusion would be highly offensive to a reasonable person.

72. Plaintiff suffered actual damages from NCG as a result of the intrusion on Plaintiff's privacy.

## COUNT IV:  VIOLATIONS OF THE FDCPA 15 U.S.C. § 1692, et seq. BY DEBT MANAGEMENT PARTNERS, LLC

73. The previous paragraphs are incorporated into this Count as if set forth in full.

74. By having a financial interest in NCG's conduct toward Plaintiff, DMP is liable for the act(s) and omission(s) of NCG and their representative(s), employee(s) and/or agent(s) for violations of 15 U.S.C. § 1692d generally and § 1692d(2)&(6) specifically, and §1692e generally and specifically §1692e(2)&(3)&(4)&(5)&(8)&(10)&(11)&(14), and §1692g(a).

75. Pursuant to 15 U.S.C. §1692k Plaintiff seeks damages, reasonable attorney's fees and costs from DMP.

## COUNT V:  VIOLATIONS OF THE TEXAS FINANCE CODE BY DEBT MANAGEMENT PARTNERS, LLC

76. The previous paragraphs are incorporated into this Count as if set forth in full.

77. By having a financial interest in NCG's conduct toward Plaintiff, DMP is liable for the act(s) and omission(s) of NCG and their representative(s), employee(s) and/or agent(s)

for violations of Tex. Fin. Code §392.301(a)(7)&(8) and §392.302(1) and §392.304(a)(1)(A)&(4)&(5)&(8)&(12)&(14)&(16)&(17)&(19).

78. DMP is additionally liable to Plaintiff under Tex. Fin. Code §392.306.

79. Pursuant to Tex. Fin. Code §392.403(a)(1), Plaintiff seeks an injunction against DMP enjoining it from future violations of the Texas Finance Code as described herein.

80. Pursuant to Tex. Fin. Code §392.403(a)(2) Plaintiff seeks damages from DMP.

81. Pursuant to Tex. Fin. Code §392.403(b) Plaintiff seeks attorney's fees and costs from DMP.

82. Pursuant to Tex. Fin. Code §392.403(e), Plaintiff seeks statutory damages of not less than $100 for each violation of the chapter in which Tex. Fin. Code §392.403(e) is codified.

## COUNT VI:  INVASION OF PRIVACY (INTRUSION ON SECLUSION) BY DEBT MANAGEMENT PARTNERS, LLC

83. In the alternative, without waiving any of the other causes of action herein, without waiving any procedural, contractual, statutory, or common-law right, and incorporating all other allegations herein to the extent they are not inconsistent with the cause of action pled here, DMP is liable to Plaintiff for colluding with NCG to invade Plaintiff's privacy (intrusion on seclusion).  DMP intentionally caused the intrusion upon Plaintiff's solitude, seclusion, or private affairs, and such intrusion would be highly offensive to a reasonable person.

84. Plaintiff suffered actual damages from DMP as a result of the intrusion on Plaintiff's privacy.

## COUNT VII:  IMPUTED LIABILITY OF THE CINCINNATI INSURANCE COMPANY FOR LIABILITY OF NICKEL CITY GROUP LLC

85. The previous paragraphs are incorporated into this Count as if set forth in full.

86.    The act(s) and omission(s) of DMP and its representative(s), employee(s) and/or agent(s)

in violation of Tex. Fin. Code §392.301(a)(7)&(8) and §392.302(1) and

§392.304(a)(1)(A)&(4)&(5)&(8)&(12)&(14)&(16)&(17)&(19)are imputed to Hartford

pursuant to Tex. Fin. Code § 392.102.

87.    Pursuant to Tex. Fin. Code § 392.403, Plaintiff seeks damages, reasonable attorney's fees

and costs from Hartford.

## COUNT VIII:  IMPUTED LIABILITY OF HARTFORD CASUALTY INSURANCE COMPANY FOR LIABILITY OF DEBT MANAGEMENT PARTNERS, LLC

88.    The previous paragraphs are incorporated into this Count as if set forth in full.

89.    The act(s) and omission(s) of DMP and its representative(s), employee(s) and/or agent(s)

in violation of Tex. Fin. Code §392.301(a)(7)&(8) and §392.302(1) and

§392.304(a)(1)(A)&(4)&(5)&(8)&(12)&(14)&(16)&(17)&(19) and §392.306 are

imputed to Hartford pursuant to Tex. Fin. Code § 392.102.

90.    Pursuant to Tex. Fin. Code § 392.403, Plaintiff seeks damages, reasonable attorney's fees

and costs from Hartford.

## EXEMPLARY DAMAGES

91.   Exemplary damages should be awarded against NCG and/or DMP because the harm with

respect to which Plaintiff seeks recovery of exemplary damages resulted from malice

(which means that there was a specific intent by NCG and/or DMP to cause substantial

injury or harm to Plaintiff) and/or gross negligence (which means that NCG's and/or

DMP's actions and/or omissions (i) when viewed objectively from NCG's and/or DMP's

standpoint at the time of the acts and/or omissions involved an extreme degree of risk,

considering the probability and magnitude of potential harm to others and (ii) were such

that NCG and/or DMP had an actual, subjective awareness of the risk involved but

nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others).

## JURY TRIAL DEMAND

92.     Plaintiff is entitled to and hereby demands a trial by jury.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff requests that the Court grant the following:

93.     Judgment in favor of Plaintiff and against Nickel City Group LLC as follows:

   a.   Actual damages pursuant to 15 U.S.C. §1692k(a)(1);

   b.   Statutory damages in the amount of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2);

   c.   Reasonable attorneys fees and costs pursuant to 15 U.S.C. § 1692k(a)(3);

   d.   Actual damages pursuant to Tex. Fin. Code §392.403(a)(2);

   e.   Statutory damages of not less than $100 for each violation of the chapter in which Texas Fin. Code §392.403(e) is codified;

   f.   An injunction permanently enjoining NCG following trial of this cause from committing acts in violation of the Texas Finance Code as cited herein pursuant to Tex. Fin. Code §392.403(a)(1);

   g.   Reasonable attorneys fees and costs pursuant to Tex. Fin. Code §392.403(b); and

   h.   Exemplary damages pursuant to the common law of Texas, see, e.g. *Waterfield Mortgage Co., Inc. v. Rodriguez*, 929 S.W.2d 641, 645 (Tex. App. 1996); and

   i.   Such other and further relief as the Court deems just and proper.

94.   Judgment in favor of Plaintiff and against Debt Management Partners, LLC as

follows:

    a.   Actual damages pursuant to 15 U.S.C. §1692k(a)(1);

    b.   Statutory damages in the amount of $1,000.00 pursuant to 15 U.S.C.

       §1692k(a)(2);

    c.   Reasonable attorneys fees and costs pursuant to 15 U.S.C. § 1692k(a)(3);

    d.   Actual damages pursuant to Tex. Fin. Code §392.403(a)(2);

    e.   Statutory damages of not less than $100 for each violation of the chapter in which

       Texas Fin. Code §392.403(e) is codified;

    f.   An injunction permanently enjoining DMP following trial of this cause from

       committing acts in violation of the Texas Finance Code as cited herein pursuant to

       Tex. Fin. Code §392.403(a)(1);

    g.   Reasonable attorneys fees and costs pursuant to Tex. Fin. Code §392.403(b); and

    h.   Exemplary damages pursuant to the common law of Texas, see, e.g. *Waterfield*

       *Mortgage Co., Inc. v. Rodriguez*, 929 S.W.2d 641, 645 (Tex. App. 1996); and

    i.   Such other and further relief as the Court deems just and proper.

95.   Judgment in favor of Plaintiff and against The Cincinnati Insurance Company as follows:

    a.   Statutory damages in the amount of not less than $100 for each violation of Tex.

       Fin. Code chapter 392, pursuant to Tex. Fin. Code § 392.403;

    b.   Damages and reasonable attorney's fees and costs pursuant to Tex. Fin. Code §

       392.403;

96.   Judgment in favor of Plaintiff and against Hartford Casualty Insurance Company as

follows:

   c.   Statutory damages in the amount of not less than $100 for each violation of Tex.

        Fin. Code chapter 392, pursuant to Tex. Fin. Code § 392.403;

   d.   Damages and reasonable attorney's fees and costs pursuant to Tex. Fin. Code §

        392.403;

   e.   Such other and further relief as the Court deems just and proper.

   f.   Such other and further relief as the Court deems just and proper.

                              Respectfully submitted,

                              THE WOOD FIRM, PLLC

                              /s/ Jeffrey D. Wood
                              Jeffrey D. Wood, Esq.
                              ArkBN: 2006164
                              209 Hubbard Dr.
                              Heath, TX  75032
                              TEL:  682-651-7599
                              FAX:  888-598-9022
                              EMAIL:  jeff@jeffwoodlaw.com
                              Attorney for Plaintiff